IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRY GANNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:10-cv-00847 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Knowles |
| CANNON COUNTY, TENNESSEE, BOARD ) | |
| OF EDUCATION, ) | JURY DEMAND |
| ) | |
| Defendant. ) | |
| ) | |

# ORDER

Pending before the Court is Defendant Cannon County, Tennessee, Board of Education's Motion for Summary Judgment ("Motion") (Doc. No. 17), filed with a Memorandum in Support (Doc. No. 18), Statements of Undisputed Material Fact (Doc. No. 19), and supporting depositions (Doc. No. 20-1 & 20-2). Plaintiff Terry Gannon filed a Response (Doc. No. 21), a supporting Brief (Doc. No. 22), a Response to Defendant's Statements of Undisputed Material Fact (Doc. No. 23), and an additional Statement of Undisputed Material Facts (Doc. No. 24). For the reasons stated herein, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

   A.   *Factual History*[1]

Plaintiff was initially employed by Defendant in the fall of 1981 at Cannon County High School, where he taught three subjects and was the head coach of the boys' basketball team.

---

[1] Unless otherwise noted, all facts in this section are undisputed and are taken from Plaintiff's Response to Defendant's Statements of Undisputed Material Facts (Doc. No. 23) and Plaintiff's Statement of Undisputed Material Facts (Doc. No. 24). Defendant has not responded to Plaintiff's Statement of Undisputed Material Facts, which

1

Plaintiff continued to teach and coach at Cannon County High School until 1990, when he was appointed principal of East Side Elementary School. He also coached boys' basketball at East Side for two years and girls' basketball for the last two years he served as principal.

Edd Diden was appointed to be the Director of Schools by the Cannon County Board of Education and assumed the position on July 1, 2004. Plaintiff testified that he performed his position as principal without incident or reprimand before Defendant hired Mr. Diden. Shortly after becoming Director of Schools, Mr. Diden met with the principals of the Cannon County schools in an effort to get to know them and the needs of the schools. Mr. Diden met with Plaintiff in September of 2004. Plaintiff testified that Mr. Diden questioned him about his health problems at the meeting, including how much time Plaintiff would be away from work due to those health problems. Plaintiff responded that he would miss work "from time to time." Plaintiff further testified that Mr. Diden questioned whether Plaintiff had considered retiring due to his health problems.

Mr. Diden testified that his impression from conversations and visits to East Side was that Plaintiff appeared to be absent from East Side often. Mr. Diden also testified that he received reports that Plaintiff was often arriving late to school, leaving early, running errands and leaving to get coffee. Plaintiff and the five other elementary school principals in Cannon County were given a Principal's Performance Contract during the first year of Mr. Diden's tenure as the Director of Schools. After his first year as Director of Schools, Mr. Diden went over a number of his concerns about Plaintiff's performance with Plaintiff. However, Mr. Diden reappointed Plaintiff as principal annually for three years. Plaintiff also began coaching the girls' basketball team in the 2006-2007

"indicate[s] that the asserted facts are not disputed for purposes of summary judgment" under Local Rule 56.01(g).

school year.

Plantiff was reprimanded on two occasions for incidents during the 2007-2008 school year. On March 26, 2008, Mr. Diden met with Plaintiff and advised him that his principals' contract would not be renewed and that he would become a physical education teacher at Auburn Elementary School beginning with the 2008-2009 school year. Plaintiff was replaced by Karen King, who, to Plaintiff's knowledge, does not suffer from any disability. The parties agree that it was solely Mr. Diden's decision to remove Plaintiff as principal.

Mr. Diden claims that he made the decision not to retain Plaintiff as a principal due to ongoing performance problems. Mr. Diden testified that Plaintiff showed a lack of assertive leadership about structural issues within the school and that some faculty and staff were dissatisfied with his performance. Plaintiff states in an affidavit that he had been led to believe that he was performing well at the time of his demotion. Mr. Diden admitted that during the school year prior to removing Plaintiff as principal, he did not have any complaints about Plaintiff's attendance or any complaints from the teachers working under Plaintiff. Two witnesses testified that East Side performed at the same level as or typically higher than the other five elementary schools in Cannon County.

Plaintiff suffers from rheumatoid arthritis, congestive heart failure, and chronic bladder problems. Plaintiff claims that his arthritis and heart problems occasionally cause him to be very weak and lethargic so that he is unable to perform any physical activity. Plaintiff sees a physician four times a year for his arthritis and has done so for approximately thirty-four years. In or around January of 2006, Plaintiff had a cardiac defibrillator implanted. He sees a cardiologist four times a year and a specialist for the defibrillator every six months. Plaintiff also underwent a number of

3

surgeries related to his arthritis, the most recent of which occurred in 1998.

Plaintiff testified that Mr. Diden informed him that the decision to demote him was due to Plaintiff's health issues. Mr. Diden admitted in his deposition that removing Plaintiff as principal caused concern within the community, and that several parents and concerned citizens confronted Mr. Diden about the removal. Three individuals declared in affidavits that Mr. Diden told them that Plaintiff was not retained as principal due to his health problems. Two of the declarants aver that Mr. Diden told them that it would be better for Plaintiff to "go ahead and retire due to [Plaintiff's] health problems." Mr. Diden recorded the conversations that he had with parents and concerned parents regarding Plaintiff's removal and claims to have left the tapes with an employee of Defendant, Marcia Melton. Ms. Melton has denied that the tapes were left with her.

Plaintiff testified that he missed work occasionally, including twelve days during the last year that he served as principal at East Side, and that all or most of his absences were due to his arthritis or congestive heart failure. Plaintiff's affidavit states that when he was unable to work he informed the school that he would be absent, and upon his return he provided documentation to the Board of Education explaining that he was absent due to his health problems. Plaintiff also states that he began directly notifying Mr. Diden of the time he missed because he was concerned about the conversation Mr. Diden initiated about his health conditions in September of 2004.

Plaintiff performed his duties at Auburn without incident for two years until he retired in May of 2010. Plaintiff admits that he never requested accommodation for his medical conditions while at Auburn, but claims that he could not withstand the physical demands of being a physical education teacher and felt that he had no other option but to retire. Plaintiff did not apply for another position after his transfer and admits that he was not aware of any available positions during

4

his tenure that he was able to perform with or without reasonable accommodation.

   B.  *Procedural History*

  Plaintiff initiated this suit against the Cannon County Board of Education on September 9, 2010. (Doc. No. 1.) Based on Plaintiff's demotion, the original Complaint alleged claims of interference and retaliation in violation of the Family and Medical Leave Act (FMLA); discrimination, retaliation, and failure to accommodate in violation of the Tennessee Disability Act (TDA)[2]; and discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act (ADA). (*Id.*) Plaintiff filed an Amended Complaint on March 7, 2011, asserting the same claims but adding constructive discharge as an adverse employment action for the purposes of the discrimination claims. (Doc. No. 13.)

  Defendant filed a Motion for Summary Judgment on September 19, 2011 (Doc. No. 17), along with a Memorandum in Support (Doc. No. 18), Statements of Undisputed Material Fact (Doc. No. 19), and supporting depositions (Doc. Nos. 20-1 & 20-2). On October 14, 2011, Plaintiff filed a Response (Doc. No. 21), a supporting Brief (Doc. No. 22), a Response to Defendant's Statements of Undisputed Material Fact (Doc. No. 23), and an additional Statement of Undisputed Material Facts (Doc. No. 24). Plaintiff simultaneously filed an Appendix with supporting documents. (Doc. No. 25.)

**II. LEGAL STANDARD**

  Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party

---

[2] Plaintiff's Amended Complaint alleges violations of the Tennessee Handicap Act, which was amended to be renamed the Tennessee Disability Act effective April 7, 2008. *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 n.6 (Tenn. Ct. App. 2009).

must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a

reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

## II. ANALYSIS

### A. *ADA Claims*

Plaintiff's Amended Complaint alleges that his rheumatoid arthritis and bladder condition are "disabilities" within the meaning of that term under the ADA, and that Defendant perceived or regarded Plaintiff as being disabled within that meaning. (Doc. No. 13 ¶¶ 51-52.) The Complaint goes on to allege that Defendant refused to allow Plaintiff the reasonable accommodation of taking intermittent time off to address his health issues and instead demoted him in retaliation. (*Id.* ¶¶ 56, 59.) Plaintiff claims that Defendant therefore violated the ADA by refusing reasonable accommodations and retaliating against him due to his disabilities. (*Id.* ¶¶ 55-60.)

#### 1. Discrimination/Retaliation

The ADA prohibits employers from discriminating against qualified individuals on the basis of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff may support a discrimination claim with direct or circumstantial evidence. *Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 855 (6th Cir. 2002). Direct evidence is that "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). The direct evidence standard generally requires the employer's admission in some form that it relied on the plaintiff's disability in making an employment decision

7

or that it discharged the plaintiff for the inability to perform a job function when that inability is caused by a disability. *Coulson*, 31 F. App'x at 855 (citing *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 429-30 (6th Cir. 1999); *Monette v. Elec. Data Sys.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). However, other direct evidence that the employer relied on the plaintiff's disability in making an adverse employment decision can also suffice. *Id.*

If a discrimination claim rests on circumstantial evidence, the traditional *McDonnell Douglas* burden-shifting analysis applies. A plaintiff must first make out a prima facie case of disability discrimination by showing that (1) the plaintiff was disabled under the ADA; (2) the plaintiff was otherwise qualified to perform the essential function of his job, with our without reasonable accommodations; (3) the plaintiff suffered an adverse employment action; (4) the employer knew or had reason to know of the disability; and (5) the plaintiff was replaced by a non-disabled person. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008) (citing *Monette*, 90 F.3d at 1186). If the plaintiff is able to make this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant is able to do so, the burden shifts back to the plaintiff to identify evidence that the proffered reason is a pretext for unlawful discrimination. *Id.* At the summary judgment stage, a court considers whether there is a genuine dispute at each stage of the burden-shifting analysis. *Id.* (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

Defendant does not dispute that Plaintiff or Plaintiff's medical conditions are not covered by the ADA. Defendant's supporting Memorandum focuses on the burden-shifting test for discrimination claims supported by circumstantial evidence, arguing that Mr. Diden had legitimate reasons for removing Plaintiff from the principal position and that Defendant is protected under the

8

same-actor inference. (Doc. No. 18 at 11-12.) Plaintiff, however, has offered his own sworn testimony as well as the sworn testimony of several witnesses claiming that Mr. Diden admitted to them that Plaintiff was demoted because of his absences due to his health problems. This testimony constitutes direct evidence of a discriminatory motive for the adverse employment action of demoting Plaintiff, and the burden-shifting analysis therefore does not apply. Should a factfinder find Plaintiff and these witnesses to be credible – a function reserved for the jury – their testimony could require the conclusion that unlawful discrimination "was at least a motivating factor" in Mr. Diden's decision. *Geiger*, 579 F.3d at 620.

Further, even if the Court were to apply the burden-shifting analysis, the testimony would serve as evidence to create a genuine dispute as to whether Mr. Diden's proffered legitimate reasons for demoting Plaintiff were mere pretext for a discriminatory motive. Finally, Defendant has cited no law that the same-actor inference applies as a defense in light of direct evidence of discrimination. For these reasons, genuine disputes of material fact exist as to Mr. Diden's reasons for removing Plaintiff from the principal position, and Plaintiff's discrimination claim under the ADA related to his demotion must survive summary judgment.

Plaintiff also claims that he suffered an adverse employment action of constructive discharge. A constructive discharge claim under the ADA "'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004)). Constructive discharge "requires a finding that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"

9

*Id.* (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). Factors that a court may consider include demotion, reduction in salary, reduction in job responsibilities, reassignment to menial or degrading work, harassment or humiliation, and ultimatums of early retirement or less favorable employment terms. *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005); *Logan v. Denny's Inc.*, 259 F.3d 558, 569 (6th Cir. 2001). Although a demotion in and of itself does not constitute a constructive discharge, it can be a significant factor in determining whether a constructive discharge occurred when combined with the other factors. *Logan*, 259 F.3d at 571 (6th Cir. 2001) (citing *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991)). In sum, a plaintiff must show intolerable conditions, the employer's intent to discriminate, and and that it was foreseeable that the conditions would induce the employee to resign. *Nance*, 527 F.3d at 555.

Defendant primarily argues that it is entitled to summary judgment on Plaintiff's alleged constructive discharge because of the "temporal disconnect" between the protected activity and Plaintiff's retirement. (Doc. No. 18 at 11.) Despite the two year time period between Plaintiff's demotion and retirement, the Court agrees that Plaintiff has presented sufficient evidence to withstand summary judgment for the alleged adverse employment action of constructive discharge.

Plaintiff argues that the loss in pay, removal of substantial responsibility, the physical demands of being a physical education teacher, and "continued references to whether Plaintiff should retire because of his health conditions" caused him to retire and constitute constructive discharge. Plaintiff does not identify evidence that Mr. Diden's suggestions of retirement continued after Plaintiff was removed from the principal position, and the Court notes that the fact that Plaintiff continued as a physical education teacher for two years before retiring may undermine his claims of physical and emotional hardship. A reasonable factfinder, however, could conclude that it

10

took two years for the physical and emotion stress to become great enough to induce Plaintiff's retirement. In light of the factors enumerated by the Sixth Circuit, there is at least a genuine dispute as to whether Plaintiff was subjected to conditions that would have caused a reasonable person to resign. Plaintiff's salary was decreased by twenty-one percent as a result of his transfer. A factfinder could reasonably find that the teaching position involved lesser job responsibilities than the principal position, and that the physical demands of being a physical education teacher for two years would become intolerable for someone with Plaintiff's medical conditions.

Finally, Plaintiff's witnesses have sworn that Mr. Diden stated that "it would be better for [Plaintiff] to go ahead and retire" due to his health problems. Thus, there is a genuine dispute of fact as to the required factor of whether Mr. Diden intended for the demotion to cause Plaintiff to retire and whether he could foresee that result. Plaintiff's claim of retaliation for the adverse employment action of constructive discharge must therefore survive summary judgment.

For the foregoing reasons, the Court **DENIES** summary judgment as to Plaintiff's discrimination and retaliation claim under the ADA.

### 2. Failure to Accommodate

The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show that (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff is otherwise qualified for the position, with or without reasonable accommodation; (3) the employer knew or had reason to know about the disability; (4) the plaintiff requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch.*

11

*Dist.*, No. 10-3267, 2011 WL 5526465, at *8 (6th Cir. Nov. 15, 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).

Defendant contests only the latter prongs of the prima facie case, arguing that Plaintiff's claim must fail as a matter of law because Plaintiff never requested any accommodation for his medical conditions. (Doc. No. 18 at 10.) Plaintiff does not respond to this argument or specifically support his claim for failure to accommodate in his Memorandum opposing summary judgment. Plaintiff's Amended Complaint alleges that "Defendant refused to allow Plaintiff the reasonable accommodation of taking intermittent time off to address his health needs." (Doc. No. 13 ¶ 38.) However, there is no evidence that Plaintiff requested the time off in advance or that Defendant refused to allow it. The sequence of the alleged facts in this case, that Defendant demoted Plaintiff subsequent to his absences, indicates that they support a claim of a retaliation claim rather than failure to accommodate. Further, Plaintiff has admitted that he did not request any accommodations after his transfer to the physical education teacher position at Auburn. The Court therefore **GRANTS** summary judgment as to Plaintiff's failure to accommodate claim under the ADA.

  B.  *TDA Claims*

The TDA prohibits "discrimination in the hiring, firing and other terms and conditions of employment . . . based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved." Tenn. Code Ann. § 8-50-103(b). Identical to Plaintiff's ADA claim, the Amended Complaint alleges that Plaintiff's rheumatoid arthritis and bladder condition are "disabilities" within the meaning of that term under the TDA, and that Defendant perceived or regarded Plaintiff as being disabled within that meaning.

12

(Doc. No. 13 ¶¶ 35-36.) The Complaint then alleges that Defendant refused to allow Plaintiff the reasonable accommodation of taking intermittent time off to address his health issues and instead demoted him. (*Id.* ¶¶ 38, 41.) Plaintiff claims that Defendant therefore violated the TDA by refusing reasonable accommodations and retaliating against him due to his disabilities. (*Id.* ¶¶ 37-42.)

1. Statute of Limitations

As a threshold issue, Defendant argues that Plaintiff's claims under the TDA are barred by the statute of limitations. (Doc. No. 18 at 8.) The TDA incorporates the rights and definitions embodied in the Tennessee Human Rights Act (THRA). *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698 (Tenn. 2000); *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009). Under § 4-21-311 of the THRA, a cause of action must be filed within one year after the alleged discriminatory practice ceases. Thus, claims under the TDA are subject to a one-year statute of limitations period. *See Walker v. Town of Greeneville*, 347 F. Supp. 2d 566, 569 (E.D. Tenn. 2004).

Plaintiff's Response addresses the statute of limitations under the FMLA, but does not appear to respond to Defendant's TDA statute of limitations defense. This action was filed on September 9, 2010, and it is undisputed that Mr. Diden informed Plaintiff of his demotion in March of 2008. Under Tennessee law, the statute of limitations for a discrimination cause of action commences when an employee receives notice of the adverse employment action, not at the time that the decision is effectuated. *Weber v. Moses*, 938 S.W.2d 387, 391-92 (Tenn. 1996). Plaintiff cannot, therefore, recover under the TDA for discrimination based on the adverse employment action of his demotion. Plaintiff also alleges, however, that he was constructively discharged when

13

he retired in May of 2010. (Doc. No. 13 ¶ 20.) Plaintiff filed his Amended Complaint to add the adverse employment action of constructive discharge on March 7, 2011. (*Id.*) Plaintiff's alleged constructive discharge occurred less than one year prior to filing the Amended Complaint and is not barred by the TDA's statute of limitations. *See Jessee v. Am. Gen. Life & Acc. Ins. Co.*, 2003 WL 165777, at *12 (Tenn. Ct. App. Jan. 24, 2003) (statute of limitations began to run on the date that the plaintiff retired for purposes of a constructive discharge claim).

### 2. Retaliation: Constructive Discharge

The standards for a claim of constructive discharge under Tennessee law are essentially the same as those established by the Sixth Circuit for discrimination claims, discussed above, *supra* Section II(A)(1). To establish discriminatory constructive discharge under Tennessee law, a plaintiff must show "that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person would resign." *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 611 (Tenn. Ct. App. 2007) (citing *Campbell v. Fl. Steel Corp.*, 919 S.W. 2d 26, 34 (Tenn. 1996)). Further, although Tennessee courts are not bound by federal law when interpreting Tennessee's anti-discrimination laws, the state courts employ federal law as guidance. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000). Accordingly, for the reasons discussed in relation to Plaintiff's claim of retaliation by constructive discharge, under the ADA, *supra* Section II(A)(1), Plaintiff's constructive discharge claim must also survive summary judgment under the TDA. The Court therefore **DENIES** summary judgment as to Plaintiff's TDA retaliation claim.

### 3. Failure to Accommodate

Defendant notes that the TDA, unlike the ADA, does not have a provision creating a cause

14

of action for failure to accommodate. (Doc. No. 18 at 8 n.2.) Even if the claim were valid, it would fail for the same reasons as Plaintiff's ADA failure to accommodate claim articulated above, *supra* Section II(A)(2). Thus, to the extent that such a judgment is necessary, the Court **GRANTS** summary judgment as to Plaintiff's TDA failure to accommodate claim.

    C.    FMLA Claims

Plaintiff's Amended Complaint alleges that his absences from work were due to "serious health conditions" under the FMLA and that the leave was therefore protected under the law. (Doc. No. 13 ¶ 24.) Plaintiff alleges that his demotion and forced termination deprived Plaintiff of the benefits and rights to which he was entitled under the FMLA. (*Id.* ¶ 26.) Specifically, Plaintiff alleges that Defendant interfered with his FMLA rights and retaliated against him for using his FMLA-protected leave. (*Id.* ¶¶ 27-28.)

        1.    Interference

Two theories of liability exist under the FMLA. First, a plaintiff may recover for interference under 29 U.S.C. § 2615(a)(1). Under the interference theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA." *Edgar v. JAC Prods, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Arban v. West Pub. Co.*, 345 F.3d 290, 401 (6th Cir. 2003)). To establish an FMLA interference claim, a plaintiff must show that (1) he is an eligible employee under the FMLA, (2) the defendant is an "employer" as defined by the FMLA, (3) the plaintiff was entitled to leave under the FMLA, (4) the plaintiff gave the employer notice of his intention to take leave, and (5) the employer denied the plaintiff the FMLA benefits to which he was entitled. *Id.*

Defendant contests only the latter elements of the interference claim, arguing that there is no

15

evidence to suggest that Plaintiff requested or was denied any leave request within the FMLA's limitations period. (Doc. No. 18 at 5.) Defendant focuses on Plaintiff's request to take leave when his mother was hospitalized during the 2004-2005 school year, which occurred outside the FMLA's statute of limitations. (*Id.*) Plaintiff's interference claim focuses, however, on Mr. Diden's decision to remove him as principal of East Side, which occurred in 2008. (*See* Doc. No. 13 ¶¶ 26-29.) Specifically, Plaintiff alleges that Mr. Diden interfered with his FMLA entitlements because he considered Plaintiff's use of FMLA leave as a factor in that decision. (Doc. No. 22 at 12.) The FMLA provides a general two-year statute of limitations and a three-year statute of limitations for willful violations. 29 U.S.C. § 2617(c). Plaintiff was notified of his demotion in March of 2008 and filed this suit in September of 2010; a interference claim based on the demotion is therefore time barred unless it was a willful violation. Thus, in order to survive summary judgment, Plaintiff must establish a genuine dispute of material fact that his demotion was impermissible retaliation in violation of the FMLA and that the violation was willful.

      29 C.F.R. § 825.220(c) states that under the FMLA's prohibition against interference, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such a hiring, promotions, or disciplinary actions." The Sixth Circuit has confirmed that this "negative-factor analysis" is applicable in evaluating an interference claim. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004); *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 408 (6th Cir. 2003)). Thus, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Id.*

      Plaintiff testified that he continually took leave related to his illnesses up to and including

16

the school year in which he was demoted, including twelve days during his last year as East Side's principal. It is also undisputed that Plaintiff notified Mr. Diden directly of the time he missed. Plaintiff therefore concludes that his health conditions and leave associated with those conditions constituted Mr. Diden's reasons for demoting him. (Doc. No. 22 at 14.) Plaintiff's assertion is supported by the sworn affidavits of at least two individuals stating that Mr. Diden told them he decided to remove Plaintiff as principal "because [Plaintiff] was absent too much due to his health problems." (Doc. No. 25-1 at 1; Doc. No. 25-4 at 1.) If a factfinder were to find Plaintiff and the other witnesses to be credible, the factfinder could reasonably conclude that Mr. Diden made his decision to demote Plaintiff at least in part on his medically-related leave. The Court finds that Plaintiff has therefore created a genuine issue of material fact as to whether his demotion constituted an impermissible interference with his FMLA rights.

This evidence also creates a genuine dispute of material fact as to whether the alleged interference was a willful violation of the FMLA. Thus, the statute of limitations issue as to Plaintiff's demotion rests on the resolution of a factual issue about which there is a genuine dispute. Further, Plaintiff's constructive discharge claim is not time barred whether or not the alleged constructive discharge was a willful violation, as Plaintiff retired in May of 2010, less than a year before he initiated this lawsuit and before he filed his Amended Complaint alleging constructive discharge. For these reasons, the Court **DENIES** summary judgment as to Plaintiff's FMLA interference claim.

      2.      <u>Retaliation</u>

A plaintiff may also recover for retaliation under § 2615(a)(2) of the FMLA. The retaliation theory considers the employer's intent, "because retaliation claims impose liability on employers

17

that act against employees specifically because those employees invoked their FMLA rights." *Edgar*, 443 F.3d at 508 (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998)). Courts therefore apply the *McDonnell Douglas* burden-shifting test to FMLA retaliation claims. *Id.* A prima facie case of FMLA retaliation requires a showing that (1) the plaintiff availed himself of a protected right under the FMLA by notifying the employer of his intent to take leave; (2) the plaintiff suffered an adverse employment action, and (3) there existed a casual connection between the plaintiff's exercise of his FMLA rights and the adverse employment action. *Id.*

For the same reasons discussed in relation to Plaintiff's interference claim, whether his retaliation claim for his demotion is time barred depends on the resolution of the factual issue of whether Defendant's alleged FMLA violation was willful. In addition to the statute of limitations defense, Defendant argues that the burden-shifting analysis weighs in its favor because Mr. Diden had legitimate reasons for removing Plaintiff from the principal position. (Doc. No. 18 at 6.) However, the same analysis that the Court applied to Plaintiff's retaliation claim under the ADA, *supra* Section II(A)(1), applies here. Defendant has not disputed that Plaintiff's absence from work was for FMLA-protected health conditions or that that the leave itself was an entitlement under the FMLA. Plaintiff has offered direct evidence of an impermissible, discriminatory motive for Mr. Diden's decision to demote him; specifically, that the demotion was in response to those absences. This direct evidence either obviates the application of the burden-shifting test entirely or serves to rebut Defendant's proffered legitimate reasons and create a genuine dispute of fact as to whether those reasons are merely pretext for an FMLA violation. Accordingly, the Court **DENIES** summary judgment as to Plaintiff's FLMA retaliation claim.

18

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's failure to accommodate claims under the ADA and TDA, and **DENIED** as to Plaintiff's claims of discriminatory retaliation under the ADA and TDA and Plaintiff's FMLA claims.

It is so ORDERED.

Entered this the ___29th___ day of December, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT